******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDWIN BRITO
(AC 36541)
(AC 36543)

Lavine, Keller and Mihalakos, Js.

*Argued October 13, 2016—officially released January 17, 2017*

(Appeal from Superior Court, judicial district of New Britain, geographical area number fifteen, D'Addabbo, J. [motion to suppress]; A. Hadden, J. [judgments].)

*Emily Wagner*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Helen J. McLellan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. In this consolidated appeal, the defendant, Edwin Brito, appeals from the judgments of conviction rendered by the trial court following his conditional pleas of nolo contendere made pursuant to General Statutes § 54-94a. In one case, the defendant pleaded guilty to one count of possession of a hallucinogenic substance in violation of General Statutes § 21a-279 (b) and, in the other case, the defendant pleaded guilty to one count of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). The defendant entered the pleas after the court denied his two motions to suppress certain evidence that the police discovered following two warrantless searches. These searches were incident to two unrelated traffic stops involving the defendant. As he did before the trial court, the defendant challenges the constitutionality of these searches. We affirm the judgments of the trial court.

The following facts and procedural histories underlie the present appeals. On April 23, 2012, the police stopped the defendant while he was operating his automobile, conducted a patdown search of the defendant and, later, conducted a warrantless search of his automobile. The police seized marijuana, PCP, and heroin from the automobile. In connection with this incident, the defendant was charged in docket number H15N-CR12-0263322-S with several drug related offenses, including possession of a narcotic substance with intent to sell. On June 22, 2012, the defendant was a passenger in an automobile that was stopped by the police. During a warrantless search of the automobile, the police seized a substance believed to be saturated with PCP from the area of the front passenger seat. In connection with this incident, the defendant was charged in docket number H15N-CR12-0264151-S with possession of a hallucinogenic substance.

In each of these criminal cases, the defendant challenged the lawfulness of the police conduct and filed motions to suppress the evidence seized by the police as the fruits of police illegality. With respect to both the April and June incidents, the defendant argued that the police lacked probable cause to stop the automobile, to conduct a patdown search of his person, and to search the automobile. The state objected to both motions. On September 12 and 25, 2013, the court held a consolidated evidentiary hearing related to both motions to suppress. The parties submitted posthearing briefs to the court, and, on November 15, 2013, the court heard oral argument related to the motions.

In its memorandum of decision of January 3, 2014, the court, *D'Addabbo, J.*, separately addressed each motion to suppress evidence. It denied both motions. Later, the defendant pleaded nolo contendere, in docket

H15N-CR12-0264151-S, to possession of a hallucinogenic substance and, in docket number H15N-CR12-0263322-S, to possession of a narcotic substance with intent to sell. Both pleas, which were accepted by the court, *Hadden, J.*, were conditioned on the defendant's right to take an appeal from the court's denial of his motions to suppress. In each case, the trial court determined that the court's ruling on the motion to suppress was dispositive of the case. In docket number H15N-CR12-0264151-S, the court sentenced the defendant to two and one-half years incarceration, followed by a term of special parole of two and one-half years, to run concurrently with the sentence imposed in docket number H15N-CR12-0263322-S. In docket number H15N-CR12-0263322-S, the court sentenced the defendant to two and one-half years incarceration, followed by a term of special parole of four years, to run concurrently with the sentence imposed in docket number H15N-CR12-0264151-S.

In AC 36541, the defendant appeals from the judgment of conviction rendered in docket number H15N-CR12-0264151-S. In AC 36543, the defendant appeals from the judgment of conviction rendered in docket number H15N-CR12-0263322-S. This court has consolidated the two appeals. Additional facts will be set forth as necessary.

In both appeals, the defendant challenges the judgments of conviction on the ground that the court improperly denied his motions to suppress evidence. Accordingly, before turning to the merits of each appeal, we set forth general principles of review that apply to the defendant's claims. "[T]he standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Kendrick*, 314 Conn. 212, 222, 100 A.3d 821 (2014).

I

AC 36541

In its memorandum of decision with respect to the motion to suppress filed in docket number H15N-CR12-

0264151-S, the court set forth the following findings of fact: "On June 22, 2012, Wethersfield Police Officer Tyler Weerden was assigned to the midnight shift with a primary assignment of patrolling the Berlin Turnpike and being proactive in motor vehicle violation enforcement. At or about 1:30 a.m., Officer Weerden was parked on the shoulder of the Berlin Turnpike near Nott Street in Wethersfield in his fully marked police vehicle. Officer Weerden testified that at approximately 1:34 a.m., he observed a white Acura motor vehicle proceeding northbound with a nonilluminated rear [registration plate] light. Officer Weerden testified that after this observation he proceeded to follow the vehicle and also was searching for a location to make a motor vehicle stop. Officer Weerden testified that while he was following the vehicle, he was able to observe that there was more than one occupant in it. Officer Weerden indicated that he proceeded to activate the emergency lights and directed the Acura to the side of the road near Jordan Lane [in] Wethersfield. After notifying Wethersfield police dispatch of the stop, he approached the passenger side of the vehicle and began engaging the occupants in conversation. While approaching the vehicle, Officer Weerden testified that he observed the front passenger do a 'shoulder dip.' This heightened his concern of the existence of illegal narcotics or a weapon. He observed two individuals in the front section and one individual in the rear seat. Officer Weerden testified that his observation of the front seated passenger (later identified as the defendant . . .) was that this passenger 'seemed out of it,' 'lethargic,' 'sweating,' appeared to be 'under the influence of something,' and that he had 'trouble keeping his head up.' Officer Weerden indicated that the passenger's conduct was not consistent with the conduct of the other passengers in the vehicle.

"Officer Weerden testified that the operator of the vehicle, Pedro Alvarado, Jr., and no other occupant had a motor vehicle operator's license.

"Officer Weerden testified that he asked the driver of the vehicle if there was anything illegal in the vehicle. Officer Weerden observed the operator look at the defendant. After Officer Weerden told the operator not to look at the passenger, but to answer the question, [Alvarado] responded to Officer Weerden that there wasn't anything illegal, but the defendant had consumed alcohol. Officer Weerden testified that he did not smell any odor of alcohol and that based on his training and experience, he believed that the passenger, [the defendant], was under the influence of drugs. Further, Officer Weerden testified that since he believed the defendant was under the influence of drugs, he developed a concern about additional drugs and guns in the vehicle. He asked [the defendant], 'what are you on?' Officer Weerden also testified that he observed 'loose tobacco' on the front passenger floor which, based upon his training and experience, was consistent with illegal nar-

cotics ingestion. Officer Weerden testified that he asked the defendant to exit the vehicle. Officer Weerden then did a 'quick' patdown of the defendant looking for weapons. After the patdown, [the defendant] was placed back in the vehicle.

"Officer Weerden testified that he searched the defendant's name through the computer system to determine if there were any outstanding warrants for him.

"Wethersfield Police Officer Kevin Foster arrived at the location. In preparation for a search of the vehicle, all three occupants were asked to exit the vehicle. Officer Brian Shea arrived with Officer Foster and informed Officer Weerden that the defendant was recently arrested for narcotic offenses.

"Officer Weerden and Officer Foster conducted a search of the interior compartment of the vehicle.

"Officer Weerden indicated that as a result of Officer Foster's search of the front seat passenger area, he observed a substance soaked in what he believed to be 'PCP' and a cell phone. Officer Foster seized this item, indicating to Officer Weerden what he had located. Officer Weerden took control of the item and conducted a field test to determine if it was contraband. The field test was positive.[1]

"Officer Weerden made a determination to arrest [the defendant] based upon his observations and [the defendant's] proximity to the contraband. Based upon his knowledge and experience of 'PCP' users, Officer Weerden testified about his concerns of actions of individuals on 'PCP' and the dangerous potential if weapons were available.

"Officer Weerden did not arrest the operator of the vehicle, as he appeared not to be under the influence of drugs or alcohol. He did not issue a motor vehicle citation for failure to have the rear marker illuminated, but did cite him for operating without a license.

"The event was captured on a DVD recording which is State's Exhibit 2.

"The court finds Officer Weerden's testimony credible." (Footnotes altered.)

In his motion to suppress, the defendant sought the exclusion of "any and all evidence, whether tangible or intangible, including statements and identifications which was seized from his person and the motor vehicle [in which] he was a passenger . . . on June 22, 2012." In its analysis of the defendant's motion, the court accurately observed that, in light of the evidence presented at the hearing, the evidence sought to be suppressed related only to the contraband discovered and seized by the police incident to their search of the vehicle, and, thus, the material issues before the court addressed the legality of the stop and subsequent search of the automobile by the police.[2] Essentially, the defendant

argued that neither police action was supported by probable cause and that the fruit of this illegality, namely, the PCP seized from under the passenger seat of the vehicle, should be suppressed.

In denying the motion to suppress, the court carefully analyzed the stop of the motor vehicle under relevant fourth amendment jurisprudence, including *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In relevant part, the court stated: "Based upon the facts set forth, the Court finds that there was a reasonable and articulable suspicion to conduct the motor vehicle stop, based upon the lack of an illuminated registration plate. This is an objectively lawful basis for a motor vehicle stop . . . . Hence, Officer Weerden had a reasonable and articulable suspicion, which was objectively based on the operator's violation of a motor vehicle statute. Despite the defendant's argument that the stop was pretextual, there was an objectively lawful basis for the motor vehicle stop. The motor vehicle stop of the vehicle in which the defendant was a passenger therefore was justified under the fourth amendment to the United States constitution." The court went on to conclude that, on the basis of information learned by Weerden during the stop, the detention and search of the vehicle in which the defendant was a passenger was lawful. The court stated that probable cause to search the entire vehicle, including any containers, for drugs or narcotics existed because of Weerden's "observations of the defendant, the conduct of the operator, and the observation of tobacco particles on the passenger floor mat."

Before this court, the defendant challenges the trial court's decision by arguing that the evidence, which included both a police video recording of the stop as well as Weerden's testimony that he had been directed by his supervisor to engage in pretexual stops as a basis to conduct more thorough investigations, undermined the court's finding that the registration plate on the vehicle in which he was a passenger was not illuminated. This factual error, the defendant argues, undermines the court's determination that the lack of an illuminated registration plate provided a sufficient basis to stop the vehicle. Also, the defendant argues that the totality of the circumstances did not support the court's finding that the police justifiably suspected that criminal activity was afoot. Thus, the defendant argues that the court erred in its determination that, following the stop, the circumstances afforded the police probable cause to search the vehicle extensively for drugs.

Before we reach the merits of the defendant's claim, we address a separate argument raised by the state that, it argues, is dispositive of the present appeal. After the state filed its brief in the present appeal, but prior to the time of oral argument, by letter submitted to this court pursuant to Practice Book § 67-10, the state drew

our attention to a recent decision of this court, *State v. Kinch*, 168 Conn. App. 62, 67–76, 144 A.3d 509, cert. denied, 323 Conn. 930,     A.3d     (2016). In this supplemental authority letter, the state, for the first time, raised the issue of whether the defendant had "standing" to challenge the legality of the search of the vehicle in which he was merely a passenger. The state asserted that *Kinch* "may be relevant to" the present issue in that it "defined a defendant's burden to establish standing to challenge the search of a motor vehicle in which the defendant is only a passenger, and it consolidated principles related to determining whether a defendant had a reasonable expectation of privacy in such a vehicle in order to establish standing." Immediately thereafter, by letter submitted to this court pursuant to Practice Book § 67-10, the defendant responded to the state's letter by drawing our attention to *Steagald v. United States*, 451 U.S. 204, 209, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981), for the proposition that "[t]he government . . . may lose its right to raise factual issues of this sort [standing] before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." (Internal quotation marks omitted.)

At the time of oral argument before this court, the parties addressed the standing issue raised by the state's supplemental authority letter. The state argued that, although it had not expressly argued before the trial court that the defendant lacked standing to challenge the search, it had not taken any contrary position before the trial court that might be interpreted as a concession that the defendant had standing or that might be grounds for an argument that the state otherwise should be estopped from raising the issue of standing on appeal. The state argued that because the issue of standing implicates "subject matter jurisdiction," it may be raised at any time. Moreover, the state argued that, although the record does not reflect that the trial court made any findings with respect to the issue of standing, there is no evidence that would support a finding that the defendant had sustained his burden of demonstrating that he had a reasonable expectation of privacy in the vehicle searched by the police. Instead, the state argues, the uncontroverted evidence demonstrated that the defendant did not have any legal relationship to the vehicle, but was merely a passenger in it at the time of the stop.

At the time of oral argument before this court, the defendant observed that the issue of standing had not been addressed expressly by the trial court. The defendant did not argue that the state had made any prior representations with respect to standing or that it had acquiesced in any findings made by the trial court in this regard. Instead, the defendant questioned the pro-

priety of the state's attempt to raise the issue of standing for the first time in its letter of supplemental authority. Although the defendant acknowledged that the defense bore the burden of demonstrating that he had standing to challenge the legality of the search, he argued that because the state had not put the defendant on notice that standing was in dispute, the defense was "not able" to present relevant evidence with respect to the issue of the defendant's interest in the vehicle searched.[3] Consequently, the defendant argued, the record is inadequate to review the issue of standing for the first time on appeal. The defendant argued that if the issue of standing is properly before this court, in light of its fact specific nature, the case should be remanded to the trial court for further proceedings related to the issue.

Preliminarily, we address the state's argument that, because it is subject matter jurisdictional in nature, the issue of standing may be raised for the first time at the present juncture. It is well settled in our case law that "[a] person may not object to the introduction of evidence resulting from an illegal search unless he first proves that he was the victim of that search. . . . One is a victim of a search when it violates his reasonable expectation of privacy in the area searched. . . . Therefore, the first question that must be answered in any suppression case is whether the individual who seeks suppression had a reasonable expectation of privacy in the area searched. . . . An individual has a reasonable expectation of privacy if he subjectively believes that the area will remain private, and that belief is one that society is willing to recognize as reasonable. . . .

"A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search." (Citations omitted; internal quotation marks omitted.) *State* v. *Burns*, 23 Conn. App. 602, 611–12, 583 A.2d 1296 (1990). The "reasonable expectation of privacy test" is a necessary component of an analysis under the fourth amendment to the federal constitution and analysis under article first, § 7, of the state constitution. *State* v. *Davis*, 283 Conn. 280, 323, 929 A.2d 278 (2007) (holding that search and seizure provision of Connecticut constitution does not embody automatic standing rule).

"The burden of proving the existence of a reasonable expectation of privacy rests on the defendant. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications." (Citation omitted; internal quotation marks omitted.) *State* v. *Kimble*, 106 Conn. App. 572, 583, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008); see also *State* v. *Kalphat*, 285 Conn. 367, 375, 939 A.2d 1165

(2008) (defendant must establish facts necessary to demonstrate reasonable expectation of privacy); *State* v. *Kinch*, supra, 168 Conn. App. 73 (burden of proving existence of reasonable expectation of privacy rests with defendant).

Our courts consistently have described the defendant's burden of proof in this regard in terms of *standing*. See, e.g., *State* v. *Kinch*, supra, 168 Conn. App. 76 ("[T]here is no basis on which the court could find that the defendant satisfied his burden of proving the existence of a reasonable expectation of privacy in the area of the vehicle searched. He thus lacked standing to challenge the legality of [the search of a vehicle in which he was a passenger]."); *State* v. *Kimble*, supra, 106 Conn. App. 585 ("court's conclusion that the defendant lacked standing to challenge the search of the automobile was supported by the facts found and was correct in law"); *State* v. *Thomas*, 98 Conn. App. 542, 551, 909 A.2d 969 (2006) (concluding that defendant who conceded that he was merely passenger in searched vehicle and claimed neither ownership nor possessory interest in vehicle or seized items "has no standing to challenge the constitutionality of the search" of vehicle), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007); *State* v. *Burns*, supra, 23 Conn. App. 612 ("because [defendant] has not been able to establish an expectation of privacy in the area of the automobile that was searched, he has no standing to challenge the constitutionality of the search").

Generally, standing is inherently intertwined with a court's subject matter jurisdiction. This court has observed that "[s]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 397–98, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014); see also *Megin* v. *New Milford*, 125 Conn. App. 35, 37, 6 A.3d 1176 (2010).

Relevant precedent, however, reflects that in the present, fourth amendment context, references to "standing" are not jurisdictional in nature, but are accurately understood to be intertwined with an evaluation of the merits of a fourth amendment claim. After recognizing

that a defendant's fourth amendment rights are personal and "may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure," the United States Supreme Court went on to clarify how the concept of "standing" should be understood in fourth amendment jurisprudence: "[T]he question necessarily arises whether it serves any useful analytical purpose to consider this principle as a matter of standing, distinct from a defendant's Fourth Amendment claim. . . . [The standing requirement in Fourth Amendment jurisprudence] is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of 'standing,' will produce no additional situations in which evidence must be excluded. . . . [T]he better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." (Footnote omitted.) *Rakas* v. *Illinois*, 439 U.S. 128, 138–39, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). The court, explicitly "dispensing with the rubric of standing" that it had used in prior case law, stated that the relevant determination asks "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Id., 140; see also *Rawlings* v. *Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) (proper fourth amendment analysis focuses on defendant's legitimate expectation of privacy in area searched).

Consistent with this precedent, our Supreme Court observed that, in *Rakas*, "prior concepts of standing to contest an illegal search were abandoned in favor of an inquiry that focused directly on the substance of the defendant's claim that he or she possessed a legitimate expectation of privacy in the area searched." (Internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 540–41, 498 A.2d 76 (1985).

Having brought into greater focus the legal import of the state's standing argument, it suffices to observe that, because the argument does not implicate subject matter jurisdiction, we need not treat it as a threshold inquiry that must be resolved. If the defendant is unable to demonstrate that the police acted in an unconstitutional manner by stopping and searching the vehicle, he is unable to demonstrate that the court erroneously denied his motion to suppress, and, thus, it is of no consequence whether he had a privacy interest in the vehicle that is protected by the fourth amendment.[4] Assuming without deciding that the defendant had standing to challenge the search,[5] we may uphold the trial court's decision if we reject the claim that he properly has presented to this court, namely, that the trial court erred in its factual findings and its determination

that, in terms of his constitutional protection against unreasonable search and seizure, the police justifiably stopped and later searched the vehicle in which he was a passenger.

A

With respect to the stop of the vehicle, the defendant argues that "[t]he court's decision to credit Weerden's testimony that the rear marker light was malfunctioning was clearly erroneous in light of the facts of the stop and the video recording of the entire stop and search." In this regard, the defendant argues that the video recording of the stop contradicted Weerden's testimony because "a close examination of the video of the [vehicle] taken before Weerden initiated the stop seems to show that the light is working." Moreover, the defendant argues that the court should have found Weerden's credibility to be suspect in light of his other testimony that, in the course of his performance review prior to the events at issue, his supervisor "recommended that Weerden continue to use pretextual stops as a basis for more in-depth investigations." The defendant argues that, because the stop was not supported by "even a pretextual investigation of a traffic violation," it was unlawful and, accordingly, any evidence seized following the stop should have been suppressed.

"Pursuant to *Terry* v. *Ohio*, [supra, 392 U.S. 1], a police officer has the authority, under the fourth amendment to the United States constitution, to stop the operator of a car if the officer has a reasonable and articulable suspicion that the operator has engaged in illegal conduct. In furtherance of this constitutional principle, our Supreme Court has held that a police officer has the right to conduct a *Terry* stop even if the reason for the stop is only that the officer observed an infraction under our traffic laws. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . . The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review. . . .

"An appeal challenging the factual basis of a court's decision that a reasonable and articulable suspicion exists requires that we determine, in light of the record taken as a whole, (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the [court's] conclusion that those facts gave rise to such a suspicion is legally correct." (Citations

omitted; internal quotation marks omitted.) *State* v. *Jones*, 113 Conn. App. 250, 259–60, 966 A.2d 277, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

We conclude that the court's factual determination with respect to Weerden's observations was supported by substantial evidence. Weerden testified that prior to the stop of the vehicle at issue, the vehicle passed his location and that "as it passed me I saw that the rear marker light was not lit up, which would be a violation. At that point I pulled out behind the vehicle to follow it, to initiate a traffic stop." The defendant argues that the police video of this stop undermines Weerden's credibility because it "seems to show" that the registration plate light was illuminated. Referring to a still image that he purports to have taken from the video and which he included in the memorandum of law related to his motion to suppress, the defendant asserts that, at one point in the video, "at the end of the stop," it "appears that the marker light was in fact illuminated." As set forth previously in this opinion, the court stated that it had reviewed this evidence and found that it was "not entirely clear." The court, however, credited Weerden's testimony concerning his observations.

We scrupulously have examined the video recording at issue. We agree with the court that it is not clear that this evidence contradicted Weerden's testimony that the registration plate light was not illuminated when he first observed the vehicle. The image quality of the video is somewhat poor. It was recorded at night, and it appears to show lights that are merely reflected by the back of the vehicle in which the defendant was a passenger, including lights that emanated from Weerden's police cruiser. Even if we were to accept as true the defendant's argument that, at one point in the recording, "at the end of the stop," it appears that the registration plate light was illuminated, such evidence would in no way tend to undermine Weerden's testimony that he had observed that the registration plate light was not illuminated just prior to the time at which he stopped the vehicle.

Also, the defendant argues that Weerden's credibility was undermined by his testimony that, in a performance evaluation that occurred in September, 2011, his supervisor recommended that he engage in "pretextual stops as a [basis to conduct] more in depth investigations." Although the defendant appears to highlight this testimony in artificial isolation and to interpret it to mean that Weerden believed that he had been instructed to *fabricate* motor vehicle violations, it is reasonable to evaluate this testimony in light of Weerden's testimony as a whole. Weerden testified as to his belief that his supervisors at the Wethersfield Police Department expected him to investigate narcotics activity if such activity came to his attention during a lawful vehicle stop. He testified that his supervisor had never advised

him to conduct an unlawful stop of a vehicle. He testified that he believed that he could stop a vehicle only if he first observed a motor vehicle violation related thereto, and that he had never "made up a motor vehicle violation so that [he] could justify a criminal charge." He stated that, in the absence of a valid reason to stop, "[t]hat's it, then they're on their way." He stated that, in the present case, he stopped the vehicle for a lack of an illuminated registration plate, and, after he stopped the vehicle for this reason, his primary concern became his investigation into the criminal charges that resulted from the stop.[6] Insofar as Weerden's testimony did not suggest that he had ever fabricated a motor vehicle violation or that he believed that it was proper to do so, we are not persuaded that his testimony, in whole or in part, undermined the court's factual finding that Weerden had testified credibly with respect to his observations of the vehicle.[7]

Weerden's testimony amply supported the court's finding that the stop of the vehicle in which the defendant was a passenger was preceded by Weerden's observation that the vehicle's registration plate was not illuminated, as required by General Statutes § 14-96c (c). The defendant does not argue that, if Weerden had observed such a motor vehicle infraction, it would not have been a lawful basis for the stop. For the foregoing reasons, we reject the defendant's claim that the stop of the vehicle violated his rights under the fourth amendment.

B

Next, the defendant challenges the court's conclusion that the police had probable cause to search the vehicle. We disagree.

Before turning to the merits of the claim, we set forth some relevant principles of law. "The police ordinarily may not conduct a search and make a seizure unless a neutral and detached magistrate first issues a warrant based on probable cause. . . . [A] warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception. . . . Specifically, a warrantless search of an automobile may be deemed reasonable if it was: (1) made incident to a lawful arrest; (2) conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) based upon consent; or (4) conducted pursuant to an inventory of the car's contents incident to impounding the car. . . .

"The United States Supreme Court first recognized the automobile exception to the fourth amendment warrant requirement in *Carroll* v. *United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925), where the court explained that if [a] search and seizure without

a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. Likewise, under our state constitution, our automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so . . . as where the searching officer[s] have probable cause to believe that the vehicle contains contraband. . . . The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made. . . .

"The justification for . . . [this] automobile exception is twofold: (1) the inherent mobility of an automobile creates exigent circumstances; and (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. . . . In recent years, the United States Supreme Court has placed an increasing emphasis on the reduced expectation of privacy justification . . . [such] that [e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception. Thus, under the fourth amendment, a warrantless vehicle search does not require a showing of exigent circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Winfrey*, 302 Conn. 195, 201–203, 24 A.3d 1218 (2011).

In the present claim, the defendant primarily challenges the court's legal determination that probable cause existed to search the vehicle.[8] We already have set forth the court's detailed findings of fact with respect to what the police observed prior to the search of the vehicle and the seizure of the contraband. On the basis of these findings, the court concluded that "the warrantless search of the vehicle in which the defendant was a passenger was supported by probable cause arising from [Weerden's] observations of the defendant, the conduct of the operator, and the observations of tobacco particles on the passenger floor mat." The court concluded that these observations, as well as the inferences that Weerden drew from them on the basis of his law enforcement training and experience, supported a finding that probable cause existed that criminal activity related to drug activity was occurring in the vehicle.

In challenging the court's determination that probable cause to search the vehicle existed, the defendant essentially argues that Weerden merely had observed conduct that was noncriminal in nature and that it could not reasonably be interpreted as evidence that criminal activity was afoot.[9] Contrary to the defendant's assessment of the facts, they supported a finding of probable cause. Weerden observed the defendant's "shoulder

dip" after he stopped the vehicle, which, in his training and experience, heightened his concern about the presence of illegal drugs. When Weerden asked Alvarado if anything illegal was in the vehicle, he did not immediately reply but looked in the defendant's direction. This furtive conduct suggested that the defendant may have attempted to conceal something in the vehicle and that the occupants of the vehicle were not being forthright with respect to illegal activity. Alvarado's conduct also tended to draw attention to the defendant himself. "Furtive movements may be considered as a factor in determining whether officers have the requisite probable cause to conduct a search or arrest. See *State* v. *Williamson*, 10 Conn. App. 532, 545, 524 A.2d 655, cert. denied, 204 Conn. 801, 525 A.2d 965 (1987); see *State* v. *Days*, 89 Conn. App. 789, 806, 875 A.2d 59, cert. denied, 275 Conn. 909, 882 A.2d 677 (2005)." *State* v. *Thomas*, supra, 98 Conn. App. 553.

These suspicions reasonably were heightened by the defendant's physical appearance. Weerden's training and experience led him to suspect that the defendant was under the influence of drugs. Although Alvarado stated that the defendant had consumed alcohol, Weerden did not smell alcohol. The defendant's physical appearance and Alvarado's seemingly untruthful explanation for it supported Weerden's suspicion that the defendant was under the influence of drugs. It can hardly be disputed that Weerden's observations, which reasonably supported a finding that the defendant was impaired, bolstered his suspicion that criminal activity was afoot. Finally, Weerden observed tobacco on the floor of the vehicle, which was in the immediate vicinity of the defendant who appeared to be "out of it" and under the influence of a drug. In Weerden's training and experience, the loose tobacco was consistent with the use or possession of illegal narcotics.[10] This observation, viewed in conjunction with Weerden's other observations, strongly bolstered any suspicion of recent illegal drug use and, accordingly, supported a finding of probable cause to search the vehicle and its contents that may have concealed evidence related to such illegal activity.

The defendant suggests by his arguments that, because Weerden did not directly observe illegal narcotics or the use of illegal narcotics prior to the search, the fact that he observed things that may have been innocuous in terms of criminality did not support a finding of probable cause. The defendant's arguments fail because probable cause does not require that the police first determine with certainty that criminal activity is afoot. "Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . [I]t is axiomatic that [a] significantly lower quant[um] of proof is required to establish proba-

ble cause [rather] than guilt. . . . [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our [citizens] . . . demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Citations omitted; internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 701, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). For the foregoing reasons, we conclude that the court properly determined that the search was supported by probable cause, and, therefore, it properly denied the defendant's motion to suppress evidence.

## II

### AC 36543

In its memorandum of decision with respect to the motion to suppress filed in docket number H15N-CR12-0264151-S, the court set forth the following findings of fact. "On April 23, 2012, Wethersfield Police Officer Brian Shea was assigned to the second shift which was from 3:30 p.m. to 11:30 p.m. or midnight. His primary responsibility on that shift was speed enforcement. He was alone, in full uniform, and in a police vehicle that was equipped with video recording capability. Officer Shea testified that at or about 1738 hours (5:38 p.m.) on April 23, 2012, he observed a Honda Accord that had dark tinted windows—[which] he believed [were] in excess of the allowable tint. These windows were so tinted that he could not see the operator or anything in the interior of the vehicle. Officer Shea proceeded to do a license plate check through the motor vehicle system. The results indicated that the registration was suspended due to no insurance. Officer Shea activated his emergency lights and effected a motor vehicle stop of that vehicle at or near Folley Brook Road. He testified that he notified Wethersfield Police Department dispatch of the motor vehicle stop. The video of the stop is State's Exhibit 7. Officer Shea testified that he approached the operator. Officer Shea interacted with the operator, identified by his Connecticut license as [the defendant], explaining that the vehicle was stopped because of the extremely tinted window and registration suspension. The defendant indicated that he was aware that the registration was under suspension, but he was just going to the store for pork chops. Officer Shea testified that he inquired of the defendant if there was anything illegal in the vehicle. [The defendant] indicated that he had a 'roach'[11] on his person and directed Officer Shea to it. Officer Shea indicated that he

detected an odor of marijuana emanating from the interior compartment of the vehicle. The defendant indicated that he had been arrested for weapons and drugs in the past. At this point, Officer Shea testified that he directed [the defendant] to exit the vehicle and he conducted a 'patdown' search. Officer Shea testified that he requested additional police backup. During the course of the patdown, a large sum of money was found in the defendant's right side pocket. Officer Shea conducted a criminal history of the defendant. The defendant had convictions for drugs and weapons violations. He admitted to previously dealing heroin and to being on probation. Officer Shea conducted a search of the vehicle, which he indicated was based upon the roach, the odor of marijuana, the large amount of money, and a concern about the existence of weapons. The interior search included the center console and glove compartment. Wethersfield Police Officers Jeffrey Poulin and Dave Gove arrived at the location. Subsequent to the stop, Sergeant Keyes (now Sergeant Rivera) arrived with the K-9 search dog. The K-9 assisted with the search. Marijuana and PCP were located in the center console. A container of urine and a container of white powdery mix were found in the glove compartment and a bundle ([thirteen] packets) of heroin and PCP were located in the rear seat areas.[12] Additionally, two cell phones were located in the vehicle.

"At the location, Police Officer Jeffrey Poulin advised the defendant pursuant to *Miranda* v. *Arizona*.[13]

"The incident was recorded and presented in evidence as State's Exhibit 7.

"After review and consideration of the evidence, the Court finds the testimony of Officer Brian Shea credible." (Footnotes in original.)

In his motion to suppress, the defendant asked the court to exclude "any and all evidence, whether tangible or intangible, and including statements, and identifications which was seized from his person and motor vehicle on April 23, 2012."[14] In his motion, the defendant expressly asserted that the police lacked "probable cause" to stop his vehicle, to search his person, and to search his vehicle. In his memorandum of law in support of the motion to suppress, the defendant argued that no exception applied to justify the warrantless search of his vehicle; he argued that the stop of the vehicle was unlawful and that the state failed to demonstrate that the warrantless search of the vehicle "was justified as incident to an arrest for a crime, as a protective sweep, or that the search was supported by probable cause." Moreover, the defendant argued that he was not arrested until *after* the narcotics had been discovered in the vehicle and that, prior to the sweep, he had been subjected to a custodial arrest.

The state argued that Shea had probable cause to

stop the vehicle on the basis of his observations and information at the time of the stop. Moreover, the state argued that the warrantless search of the vehicle was proper either because it was a valid protective sweep or because the police had probable cause to search the vehicle. In this regard, the state argued that, in the course of the lawful stop, Shea developed additional evidence upon which to conclude that the defendant was engaged in illegal activity.

The court analyzed the defendant's claim in relevant part as follows: "Based upon the facts presented at the hearing, the Court finds that there was a reasonable and articulable suspicion to conduct the motor vehicle stop based upon the extremely tinted windows and the suspended registration. This is an objectively lawful basis for a motor vehicle stop . . . .

"The Court now addresses the patdown search of [the defendant]. Reading the testimony of Officer Shea, when asked if there was anything illegal in the vehicle, [the defendant] indicated that he had a 'roach' on his person. Officer Shea also observed an odor of marijuana in the vehicle. The defendant indicated to Officer Shea that he was charged with weapons violations in the past. Officer Shea testified that upon that information he advised the defendant that he was going to pat down the defendant to determine if any weapon was present."

The court observed that an officer may conduct a patdown search if he "reasonably concludes that the driver may be armed and presently dangerous," and that the court "must use an objective standard in determining whether a police officer had a particularized basis for suspecting whether an individual should be patted down for weapons." (Internal quotation marks omitted.) The court stated: "After thorough consideration of the testimony presented and found credible and the law applicable, the Court finds that the state has sustained its burden of establishing the 'patdown' search of the defendant [was] lawful. The patdown search was conducted and over one thousand dollars was located on the defendant.

"The Court next considers the search of the interior of the vehicle. The fourth amendment requires that all searches be reasonable in their execution. Where a defendant 'moves to suppress evidence obtained from a warrantless search, the burden is on the state to prove the existence of an exception to the warrant requirement.' . . .

"Thus, in the present case, the state has the burden of showing that Officer Shea had probable cause to search the defendant's vehicle and lawfully seize the evidence. . . .

"The defendant argues that the initial stop of the defendant's motor vehicle was for a motor vehicle violation, tinted windows, and therefore any inquiry of the

defendant beyond that motor vehicle violation is improper.''

The court observed that, during a *Terry* stop, an officer may inquire into matters unrelated to the justification for the traffic stop, provided that such inquiries "do not measurably extend the stop beyond the time necessary to complete the investigation of the traffic violation and issue a citation or warning." (Internal quotation marks omitted.) The court, however, rejecting the defendant's argument that he had been illegally detained following the stop, observed that if specific and articulable facts, and reasonable inferences related thereto, warrant a further inquiry into criminal conduct, a continued investigation may occur.

The court continued: "Based upon the facts presented and found credible, the patdown search and inquiry of the defendant was justified for officer safety purposes. Additionally, the Court finds that the inquiry, the 'roach,' the 'patdown,' and resulting finding of one thousand dollars in cash, the odor of marijuana emanating from the interior of the vehicle, and the defendant's prior criminal history of narcotics possession and sales and weapons violations is sufficient to establish the officer's purpose of continued investigation."

After setting forth legal principles with respect to the automobile exception to the warrant requirement in situations in which the police, on the basis of objective facts, have probable cause to believe that a vehicle contains contraband, the court stated: "In the present case, this Court finds that the warrantless search of the defendant's vehicle was supported by probable cause arising from the odor of marijuana emanating from the interior of the vehicle, the presence of a roach, one thousand dollars in cash and the defendant's criminal history of weapons violations and narcotics sales.

"Moreover, this Court also finds that the aforementioned circumstances provided probable cause to search the entire vehicle, including any containers, for drugs or narcotics. . . .

"The evidence seized from the defendant's vehicle was not the fruit of an unlawful traffic stop. The search was not a continuation of the motor vehicle violation investigation, but rather, was based upon additional observations and information obtained by the officer after the initial stop. The patdown of the defendant was justified and the warrantless search of the defendant's vehicle and the containers therein was supported by probable cause." For the foregoing reasons, the court denied the motion to suppress.

The defendant challenges the court's decision by claiming that: (1) contrary to the court's analysis, the patdown search was illegal under *Terry* because Shea did not reasonably suspect that the defendant posed a harm to the police or others; (2) the court should have

suppressed the evidence seized by the police as being the fruit of an illegal arrest; and (3) contrary to the court's analysis, the warrantless search of the vehicle was illegal because it did not fall under the automobile exception.[15] Having already set forth our standard of review of a trial court's ruling on a motion to suppress evidence, we will address these arguments in turn.

## A

First, we address the defendant's claim that the patdown search was unlawful. "A police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws. Upon doing so, he prudently may prefer to ask that an occupant exit the vehicle; any intrusion upon an occupant's personal liberty in directing that action is de minimis because, on balance, it serves to protect the officer. . . . Even a reasonable direction to do so may be appropriate because [c]ertainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." (Citation omitted; internal quotation marks omitted.) *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988). When a patdown search for weapons is warranted under a totality of the circumstances, our law recognizes the constitutionality of it. "When conducting a patdown search of a suspect, the officer is limited to an investigatory search for weapons in order to ensure his or her own safety and the safety of others nearby. . . . The United States Supreme Court has held that police need only establish a reasonable suspicion that a suspect is armed and dangerous to justify a patdown of the suspect on a public street. . . . Accordingly, the [Supreme Court of the United States has] authorized a limited patdown search for weapons under circumstances in which a reasonably prudent officer is warranted in believing, on the basis of specific and articulable facts, that the person with whom he is dealing is armed and dangerous. . . . Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . In ascertaining whether reasonable suspicion existed for the patdown search, the totality of the circumstances—the whole picture—must be taken into account." (Citations omitted; internal quotation marks omitted.) *State* v. *Starks*, 94 Conn. App. 325, 330–31, 892 A.2d 959, cert. denied, 278 Conn. 918, 901 A.2d 44 (2006); see also *State* v. *Willoughby*, 153 Conn. App. 611, 623–24, 102 A.3d 1118 (2014).

Primarily, the defendant challenges the court's analysis of the patdown search by challenging the court's factual finding that Shea had advised the defendant that he was going to conduct a patdown search *after* he had

learned from the defendant that he had been charged with a weapons violation in the past. The defendant argues that the evidence demonstrated that Shea made the decision to conduct the patdown search *before* he asked the defendant about his criminal history involving weapons. The defendant argues that Shea decided to conduct a patdown search solely on the basis of (1) his traffic violations, (2) his possession of a roach, and (3) his admitted history of drug use and sales. Thus, the defendant argues, the court could not reasonably have concluded that the patdown search was motivated by anything other than Shea's desire to search the defendant for evidence of illegal drugs.

We carefully have reviewed the video recording of the events at issue. That recording reflects that on two occasions, Shea advised the defendant that he was going to conduct a patdown search. Shea did so once *before* he had learned of the defendant's prior weapons charge and once *after* he had learned of the defendant's prior weapons charge. The recording reflects, however, that it was only *after* he had asked the defendant about prior weapons charges and *after* he had learned that the defendant had such a charge that Shea stated that he would conduct a patdown search for weapons, instructed the defendant to exit his vehicle, and conducted the patdown search at issue. At that time, Shea stated that he was going to conduct the patdown search to "make sure" that the defendant was not "carrying." On the basis of this evidence, we conclude that the court's factual finding with respect to the patdown search conducted by Shea was not inconsistent with the evidence.

The defendant proceeds to argue that, in the absence of the evidence of the defendant's admission that he had a prior weapons charge, the court's legal analysis was flawed because the totality of the circumstances known to Shea did not give rise to a reasonable and articulable suspicion that the defendant was armed and, thus, posed a risk to anyone. Because we have concluded, however, that the evidence supported the court's finding that Shea's patdown search of the defendant was based *in part* on the defendant's prior criminal history with respect to weapons,[16] we reject this aspect of the claim.[17]

B

Next, we address the defendant's claim that the court should have suppressed the evidence seized by the police as the fruit of an illegal arrest. We disagree.

Before this court, the defendant also argues that even if Shea was justified in conducting a patdown search under *Terry*, the trial court should have suppressed "evidence taken at the time of his unlawful arrest" because it was the fruit of an investigative detention that exceeded its lawful duration. In this regard, the

defendant argues that "the police exceeded the permissible scope and duration of the initial investigative detention prior to the time when the facts known to them would support the inference of probable cause necessary for a lawful arrest." He argues that the evidence reflects that he was seized when Shea ordered him to exit his vehicle, and that he was thereafter handcuffed and detained in the back of a police cruiser for more than one hour based solely on his admission of past drug and weapons charges, and his commission of "minor civil violations" related to his tinted windows, his suspended registration, and his possession of less than one-half ounce of marijuana in the form of the marijuana roach.[18] He argues that he clearly had been seized prior to the discovery of the contraband in his vehicle and, thus, prior to the time at which the police had probable cause to arrest him without a warrant.

The state argues that "[t]he exact nature of the defendant's claim is unclear," and, on the basis of our review of the defendant's motion to suppress, his memorandum of law in support of the motion, and the transcript of the argument related to the motion, it does not appear that, before the trial court, the defendant raised the present claim with the degree of precision reflected in his arguments before this court. Nonetheless, it appears from our review of the trial court's memorandum of decision that the court considered and explicitly rejected the defendant's arguments to the extent that they suggested that the police had illegally extended the investigative detention of the defendant beyond that warranted by *Terry*.

"Courts considering the constitutionality under the fourth amendment of a police officer's interaction with a motorist during a routine traffic stop apply the principles developed under the line of case law implementing the central holding of *Terry* v. *Ohio*, supra, 392 U.S. 1. . . . Under *Terry*, where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions. . . .

"Although a police officer cannot detain a motorist indefinitely, the Supreme Court has rejected attempts to impose a hard-and-fast time limit on *Terry* stops, in favor of a reasonableness inquiry where, [i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. . . . A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge

in unrealistic second-guessing. . . . Therefore, judicial review of routine traffic stops goes beyond a strict stopwatch test; reasonableness is not measured solely by the temporal duration of the stop alone but, rather, requires scrupulous consideration of the reasonableness of the officers' actions during the time of the stop. . . .

"Moreover, [a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. . . . An officer's inquiries into matters unrelated to the justification for the traffic stop, [the United States Supreme Court] has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Sward*, 124 Conn. App. 546, 552–54, 5 A.3d 965 (2010).

"[I]n evaluating the duration of a traffic stop, the reviewing court . . . must consider the stop through the lens of the time reasonably necessary to effectuate the initial purpose of the traffic stop, and expansions of the stop beyond that time are constitutionally impermissible *in the absence of an independent basis of objectively reasonable, articulable suspicion.*" (Emphasis added.) *State* v. *Jenkins*, 298 Conn. 209, 242, 3 A.3d 806 (2010).

In the present appeal, the defendant does not challenge the legality of the stop that preceded his detention. The defendant contends that his detention was the legal equivalent of a custodial arrest. In contrast, the state argues that the police properly extended the *Terry* stop that originated with the tinted windows due to police suspicion that criminal activity was afoot. In view of the totality of the circumstances, the police had an objectively reasonable, articulable suspicion to justify the expansion of the investigatory detention of the defendant beyond the initial purpose of the stop, which was related to his tinted windows. Following the stop but during the time in which he was investigating the initial stop, Shea reasonably suspected that the defendant was engaged in additional criminal activity in that he learned that the defendant's registration was suspended, he had an arrest history related to illegal drugs and weapons, he was in possession of a substantial amount of cash, he was in possession of a marijuana roach, and the smell of marijuana was emanating from his vehicle. A subsequent search of the vehicle[19] revealed the presence of illegal drugs.

As the United States Supreme Court has observed, "[a]n officer . . . may conduct certain unrelated

checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez* v. *United States*,      U.S.      , 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015). On the basis of the articulable facts in the present case, viewed in their totality, the court properly concluded that the police did not unreasonably detain the defendant. The defendant has not demonstrated that his detention beyond the initial purpose of the stop was not the result of reasonable police suspicion of criminal activity, the investigation of which ultimately led to the defendant's arrest. Accordingly, the defendant's claim that suppression of the subject evidence was warranted is without merit.

C

Finally, the defendant challenges the court's conclusion that police had probable cause to search the vehicle. We disagree.

As discussed previously in this opinion, the court concluded that the search of the defendant's vehicle was lawful because it was supported by probable cause. The court relied on specific facts known to the police, namely, that the defendant was in possession of a marijuana roach, that the smell of marijuana was emanating from the vehicle, that the defendant was in possession of a substantial amount of cash, that the defendant had an arrest history related to illegal drugs, and that the defendant had an arrest history related to weapons.

The defendant argues that the court's analysis of probable cause was flawed because (1) in its assessment of probable cause, the court improperly considered the marijuana roach in light of the fact that, after the passage of No. 11-71 of the 2011 Public Acts, the defendant's possession of less than one-half ounce of marijuana was not criminal in nature; and (2) the remaining facts considered by the court did not support a finding that probable cause to search the vehicle existed.[20]

In part I B of this opinion, we set forth relevant legal principles concerning warrantless automobile searches, and we rely on those principles in the present claim. We observed that the police may conduct a warrantless search "when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime." *State* v. *Winfrey*, supra, 302 Conn. 201. Additionally, "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . The determination of whether probable cause exists under the fourth

amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test. . . . [A] court must examine all of the evidence relating to the issue of probable cause and, on the basis of that evidence, make a commonsense, practical determination of whether probable cause existed. . . . [Our Supreme Court has] said that the question is whether there was a fair probability that the contraband was within the place to be searched." (Footnote omitted; internal quotation marks omitted.) *State* v. *Crespo*, 145 Conn. App. 547, 555–56, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015).

The gravamen of the defendant's claim is that because No. 11-71 of the 2011 Public Acts, codified as General Statutes § 21a-279a,[21] decriminalized the possession of less than one-half ounce of marijuana for purposes of General Statutes § 54-142d; see *State* v. *Menditto*, 315 Conn. 861, 874–75, 110 A.3d 410 (2015); the "infractious quantity of marijuana" he possessed at the time of the stop could "not provide probable cause to search [his] vehicle." The defendant argues: "This court should conclude that given this shift in the status of possession of less than one-half ounce of marijuana, evidence of such a 'minor civil violation' would not satisfy the standard used to determine the validity of a warrantless search . . . ." Essentially, the defendant evaluates the issue of probable cause as involving only "a traffic violation" (arising from his tinted windows and suspended registration) and "the admission of an infractious amount of marijuana" (arising from his admitted possession of the marijuana roach). Stated otherwise, according to the defendant, it was error for the court to have based its finding of probable cause on evidence that merely tended to demonstrate that he had committed a minor civil offense, rather than on evidence that he had engaged in criminal activity. Although the defendant argued that probable cause to search the vehicle did not exist, he did not make this argument related to the decriminalization of the possession of less than one-half ounce of marijuana before the trial court. The trial court did not address this argument it in its memorandum of decision denying the motion to suppress.

As set forth previously in this opinion, the court considered the totality of the circumstances apparent to the police prior to the search, including the marijuana roach, the odor of marijuana emanating from the vehicle that was being occupied solely by the defendant, the defendant's admitted history of drug dealing and related arrests, the defendant's history of a weapons charge, and the $1000 found on the defendant incident to the patdown search. The court determined that the totality of the circumstances afforded the police "probable cause to search the entire vehicle, including any containers, for drugs or narcotics."

Contrary to the defendant's analysis of the issue of

probable cause, the court did not analyze the issue based solely on the defendant's motor vehicle violations and his possession of the marijuana roach. Instead, the court properly looked to all of the facts known to the police. The defendant seemingly argues that because his possession of the marijuana roach, when considered in isolation, was insufficient to convict him of a crime, the court should not have considered it. Yet our decisional law reflects that probable cause need not be based on evidence that, in and of itself, is criminal in nature or is sufficient for conviction. See, e.g., *Skakel* v. *State*, 295 Conn. 447, 479 n.22, 991 A.2d 414 (2010) ("The existence of probable cause does not . . . turn on whether the defendant could have been convicted on the same available evidence. . . . [P]roof of probable cause requires less than proof by a preponderance of the evidence." [Internal quotation marks omitted.]); *State* v. *Grant*, 286 Conn. 499, 516 n.10, 517–18, 944 A.2d 947 (probable cause may exist despite plausible innocent explanation for evidence connecting defendant with crime), cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).

Here, the court did not conclude that probable cause to search existed solely because of the defendant's tinted windows, his expired registration, or the fact that he possessed the marijuana roach. The circumstances, viewed in their entirety, supported a finding of probable cause that the defendant was engaged in criminal conduct in that Shea not only learned that the defendant was in possession of the roach, but also detected the smell of marijuana emanating from the defendant's vehicle.[22] Shea detected this smell immediately after he stopped the vehicle, which was being driven by the defendant and in which the defendant was the sole occupant. It is noteworthy that, during his testimony at the suppression hearing, Shea repeatedly referred to the smell of marijuana emanating from the vehicle. He was asked what he was looking for during his search of the vehicle. He replied: "Well, based on the burnt marijuana that he had on his person, and the smell coming from the car, I was originally just looking for *additional evidence of marijuana use in the car.*" (Emphasis added.)[23] The video recording of the stop reflects that, when a fellow officer responded to the scene, Shea related to him his impressions of the stop and, in so doing, stated that he smelled marijuana and "obviously [the defendant] was smoking."

Thus, contrary to the defendant's argument, this case did not merely present facts related to the mere possession of less than one-half ounce of marijuana. Instead, the facts gave rise to a suspicion of criminal activity, specifically, that the defendant was driving while under the influence of marijuana. Such conduct is prohibited by General Statutes § 14-227a. It follows that, immediately following Shea's observations, the police had probable cause to search the vehicle for evidence of a

crime, namely, his recent use of marijuana inside of the vehicle.[24] Although the defendant emphasizes that the defendant was not charged with violating § 14-227a, that fact is of no consequence to our analysis, which focuses on whether the police had probable cause to believe that the defendant's vehicle contained evidence of criminal activity.

Separate from the issue of whether the police had probable cause to believe that the vehicle contained evidence of criminal activity, the present case, as the court determined, involves probable cause to believe that the vehicle contained contraband. Although the defendant's possession of the marijuana roach constituted a minor civil violation, and not a crime, his possession of the roach nonetheless was evidence that he was in possession of contraband at the time of the stop. Section 21a-279a (b) provides: "The law enforcement officer issuing a complaint for a violation of subsection (a) of this section shall seize the cannabis-type substance and cause such substance to be destroyed as contraband in accordance with law." The evidence of the marijuana roach and the smell of marijuana emanating from the vehicle, when viewed in light of the other facts known to Shea, including the defendant's criminal history involving the sale of illegal drugs and his possession of $1000 at the time of the stop,[25] gave rise to more than a mere suspicion that there could be *additional* contraband inside of the vehicle beyond the marijuana roach possessed by the defendant. The facts, in their totality, gave rise to probable cause that there was contraband, which the police were authorized to seize and destroy, inside of the vehicle.

In light of the foregoing, we conclude that the court properly denied the defendant's motion to suppress the evidence seized following the stop of the defendant's vehicle.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] "State laboratory examination resulted in a finding of PCP."

[2] The defendant also challenged the admissibility of any identifications or statements made by him, as well as any evidence seized from his person incident to the patdown search that transpired following the stop of the automobile. The court observed that no evidence was presented with respect to any statements or identifications that the defendant sought to suppress or any evidence seized incident to a patdown search. The defendant does not challenge that observation.

[3] To the extent that the defendant baldly asserts before this court that the state's failure to raise the issue of standing before the trial court somehow left the defense unable to present evidence to satisfy the defendant's burden of proof with respect to this essential element of his motion to suppress, the argument totally lacks merit.

[4] The state raised the standing issue as an appellee in the present appeal. It appears that, before the trial court, the state did not challenge the defendant's standing to raise his fourth amendment claim. Moreover, it appears that, before the trial court, the defendant, who bore the burden of demonstrating that he had a protectable interest in the area searched or the contraband seized, did not present *any* evidence with respect to the issue of standing. In these circumstances, in which the court did not make relevant factual determinations with respect to standing, if we were to find it necessary to

reach the issue of standing, it would be appropriate, as the defendant suggests, for this court to remand the case to the trial court for both an evidentiary hearing and a decision related to the issue. See *Combs* v. *United States*, 408 U.S. 224, 227–28, 92 S. Ct. 2284, 33 L. Ed. 2d 308 (1972).

[5] Viewed in light of the principles set forth previously in this opinion, the evidence presented at the suppression hearing did not support a determination that the defendant (who did not claim a possessory interest in the contraband seized from the vehicle) had a privacy interest in the vehicle and, thus, had standing to challenge the stop or search of the vehicle. The defendant did not testify at the suppression hearing. There was evidence that, when the stop occurred, the defendant was in the passenger seat of the vehicle and Pedro Alvarado, Jr., was in the operator's seat. There was evidence that none of the occupants of the vehicle had an operator's license. After checking the vehicle's registration plate against state records, Weerden determined that the registered owner was a Steven Alvarado, whom Weerden believed to be the brother of Pedro Alvarado, Jr. Moreover, Weerden testified that the defendant never asserted that he owned the vehicle.

[6] Weerden testified that, although he issued a citation to Pedro Alvarado for failing to possess an operator's license, he did not issue a citation for the lack of an illuminated registration plate light.

[7] The evidence reflected that, in his performance evaluation, Weerden's supervisor recommended that he engage in "pretexual stops as a [basis to conduct] more in depth investigations." As we have discussed, Weerden clearly did not interpret this recommendation as a directive that he should fabricate reasons to conduct stops or that he otherwise should violate the law. Insofar as this specific recommendation, and particularly its use of the word "pretexual," could be interpreted as a directive to fabricate reasons to conduct stops, it is a recommendation that concerns us because it could invite illegality on the part of Wethersfield police officers.

[8] At one point in its decision, the court stated: "Officer Weerden observed what he believed to be, based upon his training and experience, criminal activity, to wit, narcotics possession and use, in the vehicle." The defendant argues that this finding of fact is clearly erroneous because there was no evidence that, prior to the search, Weerden had observed narcotics possession and use in the vehicle. The defendant's challenge to the court's factual findings in this regard is not persuasive. On the basis of Weerden's testimony, the court accurately stated that Weerden's observations, and the inferences he drew from them, led him to believe that criminal activity was afoot. Weerden did not testify, nor did the court find, that, prior to the time of the search, Weerden had observed narcotics or had observed anyone using narcotics.

[9] Additionally, before this court, the defendant disputes an argument that the state advanced before the trial court, namely, that a protective search of the vehicle was justified as a means of protecting the safety of the officers. The trial court did not address this argument or base its decision on this ground. For these reasons, and because we uphold the search as being supported by probable cause, we need not address this aspect of the defendant's claim.

[10] Weerden testified in relevant part: "[W]hen I was talking to the occupants, I noticed there was loose tobacco on the floor, which is consistent with PCP users, marijuana smokers, they'll often times empty out the cigar tobacco and fill it with the product and then smoke it that way."

[11] "A roach is the end of a smoked marijuana cigarette."

[12] "State lab results indicate PCP and heroin. State's Exhibits 10 and 11."

[13] "*Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)."

[14] The defendant specified that the evidence at issue included "Cash," "PCP," "Marijuana," "Protein powder described as 'unknown,'" "Heroin," and "Urine." Before both the trial court and this court, the defendant has not identified any statements or identifications that are encompassed by his motion to suppress. As did the trial court, we will focus on the physical evidence seized from the defendant's person and his vehicle.

[15] Additionally, the defendant argues that the search of the vehicle was not made incident to a lawful arrest. The defendant acknowledges that the court did not base its decision on this ground, but addresses it because the state argued before the trial court that the search was justified on this alternative ground. Because we conclude that the search was supported by probable cause, we need not address this aspect of the defendant's claim.

[16] Shea testified that during the stop he learned that the defendant had been arrested on a weapons charge in the past. He stated: "I was concerned that the subject may have, in speaking with him, may have a weapon in his

possession or possible. That was another concern of mine."

[17] The state argues, and we agree, that even in the absence of the defendant's admission with respect to his prior weapons history, the totality of the circumstances known to Shea supported a reasonable and articulable suspicion that he was armed and dangerous. Among the facts known to Shea was that the defendant had a substantial history involving the sale and possession of illegal drugs, his vehicle emanated the scent of marijuana, and the defendant admitted to being in possession of a roach. Prior to ordering the defendant out of his vehicle and conducting the patdown search, the defendant stated to Shea that he had "a super long history" relating to drugs and, in fact, stated that his involvement with heroin was "[b]y the truckload." He stated that he was on probation for "heroin" and that his criminal history involved "dealing." Our courts have recognized the connection between the illegal drug trade and forms of crime involving firearms. Thus, our Supreme Court has observed that "[t]here is a well established correlation between drug dealing and firearms. *United States* v. *Simon*, 767 F.2d 524, 527 (8th Cir. 1985); *United States* v. *Milham*, 590 F.2d 717, 721 (8th Cir. 1979)." *State* v. *Cooper*, 227 Conn. 417, 426 n.5, 630 A.2d 1043 (1993).

[18] The evidence reflects that after the patdown search, Shea instructed the defendant to sit, unrestrained, on the rear bumper of the defendant's vehicle. The defendant was not handcuffed until after Shea had conducted a preliminary search of the vehicle and found bags of white powder, which he believed to be either heroin or a cutting agent. The defendant was not detained in a police cruiser until after the police found additional substances that they believed to be illegal drugs in the vehicle. It was not until after the police, assisted by the K-9 dog, discovered the thirteen packets containing heroin in the back of the vehicle, that the defendant was placed under arrest.

[19] The search of the vehicle is addressed in part II C of this opinion.

[20] Additionally, the defendant argues that in light of the evidence that Shea had "decided to search" the vehicle prior to the discovery of the $1000 found incident to the patdown search, it was improper for the court to consider that evidence in determining whether probable cause to search the vehicle existed. This argument is unpersuasive in light of the evidence, specifically, the video recording of the stop. The video recording reflects that Shea did not manifest his intention to search the vehicle, and did not search the vehicle, until after he completed the patdown search of the defendant.

[21] General Statutes § 21a-279a provides: "(a) Any person who possesses or has under his control less than one-half ounce of a cannabis-type substance, as defined in section 21a-240, except as authorized in this chapter, shall (1) for a first offense, be fined one hundred fifty dollars, and (2) for a subsequent offense, be fined not less than two hundred dollars or more than five hundred dollars.

"(b) The law enforcement officer issuing a complaint for a violation of subsection (a) of this section shall seize the cannabis-type substance and cause such substance to be destroyed as contraband in accordance with law.

"(c) Any person who, at separate times, has twice entered a plea of nolo contendere to, or been found guilty after trial of, a violation of subsection (a) of this section shall, upon a subsequent plea of nolo contendere to, or finding of guilty of, a violation of said subsection, be referred for participation in a drug education program at such person's own expense."

[22] Essentially, the defendant argues that the fact that Shea smelled marijuana should not be a factor in our analysis because such a smell could have been related to an amount of marijuana that was lawful for him to possess, but not an amount of marijuana that was unlawful for him to possess. Thus, he argues that "[t]here was no evidence offered at the suppression hearing in the present case that Officer Shea smelled a criminal—rather than a civil—amount of marijuana emanating from the defendant's car or that he had any specialized training allowing him to do so." As we have discussed previously in this opinion, Shea properly searched the vehicle because he had probable cause to believe that there was evidence therein related to the criminal activity of driving under the influence of marijuana or that there was contraband present in the vehicle. Evidence of these grounds was not dependent upon the presence of a particular quantity of marijuana in the vehicle, but could have been taken the form of less than one-half ounce of marijuana. Accordingly, Shea's perception of the smell of *any* amount of marijuana was relevant to our analysis.

[23] In his reply brief, the defendant argues that "[t]here is no evidence . . . that Officer Shea premised his actions on the suspicion that the defendant was driving under the influence of marijuana." Additionally, the defendant

argues that the state should be precluded from asserting for the first time on appeal that the search was justified under the theory that Shea was searching for evidence that the defendant had driven while under the influence of marijuana.

In its objection to the motion to suppress, the state argued in broad terms that there was probable cause to search for evidence of criminal activity related to "drug violations." During argument on the motion to suppress, the state argued in similarly broad terms that the search was justified both because Shea believed "that there [was] criminal activity afoot" and because "there was illegal contraband in the car." We are not persuaded by the defendant's argument that the state's appellate arguments are in any manner inconsistent with those that he raised before the trial court or Shea's testimony, which demonstrated that, at the time of the search, he was concerned not only with finding contraband, but with "marijuana use in the car."

[24] For these reasons, the present case is distinguishable from *Commonwealth* v. *Cruz*, 945 N.E.2d 899, 911–14 (Mass. 2011), on which the defendant relies heavily. In *Cruz*, the Supreme Judicial Court of Massachusetts held that, following the decriminalization of one ounce or less of marijuana, the police lacked probable cause to search a vehicle in which the defendant was a passenger on the basis of evidence that the driver of the vehicle had smoked marijuana earlier that day. The court in *Cruz* concluded that "no facts were articulated to support probable cause to believe that a *criminal* amount of contraband was present in the car." (Emphasis in original.) Id., 913. In the present case, the facts supported a finding of probable cause to search for evidence of a crime, specifically, that the defendant was driving while under the influence of marijuana or that he was involved in the sale of illegal drugs. Additionally, we distinguish our analysis from that set forth in *Cruz* because we adhere to well settled Connecticut precedent that permits the warrantless search of an automobile when there is probable cause to believe that evidence of criminal activity *or* contraband is located therein. See, e.g., *State* v. *Winfrey*, supra, 302 Conn. 201; see also *People* v. *Waxler*, 224 Cal. App. 4th 712, 721, 168 Cal. Rptr. 3d 822 (2014) ("a law enforcement officer may conduct a warrantless search of a vehicle pursuant to the automobile exception when the officer has probable cause to believe the vehicle contains marijuana, which is contraband").

[25] It appears that, in our evaluation of probable cause to search the vehicle, the defendant urges us not to consider the $1000 found as a result of the patdown search. This is because the state, in its analysis of the patdown search, in addition to arguing that the patdown search was valid, also argued that the fruit of the patdown search did not taint the subsequent search of the vehicle. We already have concluded that the patdown search was valid and, like the trial court, we deem it relevant and appropriate to consider the $1000 in our evaluation of probable cause to search the vehicle. It suffices to observe that, in the absence of a reasonable explanation for the defendant's possession of $1000, it tended to support an inference that he was engaged in illegal activity related to drugs. Shea asked the defendant if he was paid in cash by his employer. The defendant stated, "No." Also, Shea asked the defendant if he had cashed a check recently. The defendant did not reply to this inquiry.