******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* ROBERT OVERSTREET
## (AC 46253)

Elgo, Clark and Westbrook, Js.

*Syllabus*

Convicted of illegal possession of a weapon in a motor vehicle, the defendant appealed to this court. The defendant claimed, inter alia, that the trial court improperly denied his motion to suppress the evidence seized from his vehicle. *Held*:

This court declined to review the defendant's unpreserved claim that the trial court should have suppressed the machete that had been seized from his vehicle because the record was not adequate for review, and, accordingly, the claim failed under the first prong of the test for reviewing a claim of constitutional error not preserved at trial set forth in *State* v. *Golding* (213 Conn. 233).

This court declined to review the defendant's unpreserved claim that his conviction of illegal possession of a weapon in a motor vehicle in violation of statute (§ 29-38) violated his right to bear arms under the second amendment to the United States constitution because the claim was unreviewable under the first prong of *Golding*.

The defendant's unpreserved claim that § 29-38 was unconstitutionally vague as applied to him in violation of his due process rights failed under the third prong of *Golding* because the defendant failed to meet his burden of establishing that an alleged constitutional violation existed.

This court declined to review the defendant's unpreserved claim that § 29-38 was unconstitutionally overinclusive in violation of his right to due process because the record was inadequate to review the claim, and, accordingly, it failed under the first prong of *Golding*.

Argued January 13—officially released April 29, 2025

*Procedural History*

Two part substitute information charging the defendant, in the first part, with two counts of the crime of possession of narcotics with intent to sell and one count of the crime of illegal possession of a weapon in a motor vehicle, and, in the second part, with being a persistent serious felony offender, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the first part of the information

was tried to the jury before *Schuman, J.*; verdict of guilty of illegal possession of a weapon in a motor vehicle; thereafter, the defendant was presented to the court, *Iannotti, J.*, on a plea of guilty to the second part of the information; judgment in accordance with the verdict and the plea, from which the defendant appealed to this court. *Affirmed.*

*Nicole Van Lear*, deputy assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Maria A. Arroyo*, assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Robert Overstreet, appeals from the judgment of conviction, rendered after a jury trial, of illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.[1] On

---

[1] General Statutes § 29-38 provides in relevant part: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon . . . shall be guilty of a class D felony, and the presence of any such weapon . . . in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means . . . any knife the edged portion of the blade of which is four inches or more in length . . . .

"(b) The provisions of this section shall not apply to . . . (5) any person having a knife, the edged portion of the blade of which is four inches or more in length, in a vehicle if such person is (A) any member of the armed forces of the United States, as defined in section 27-103, or any reserve component thereof, or of the armed forces of the state, as defined in section 27-2, when on duty or going to or from duty, (B) any member of any military organization when on parade or when going to or from any place of assembly, (C) any person while transporting such knife as merchandise or for display at an authorized gun or knife show, (D) any person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired, (F) any person holding a valid hunting, fishing or trapping license issued pursuant to chapter

appeal, the defendant claims that (1) the trial court improperly denied his motion to suppress evidence seized from his vehicle, (2) § 29-38 violates his right to bear arms under the second amendment to the United States constitution,[2] (3) § 29-38 is unconstitutionally vague as applied to him, in violation of his due process rights, and (4) § 29-38 is unconstitutionally overinclusive in violation of his due process rights.[3] We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the defendant's claims. On March 5, 2019, four Waterbury police officers were patrolling the city in two unmarked patrol cars. Officers Christopher Carpentieri and Garrett Pagel were in the lead patrol car and Officers John Stankus and Keith Shea followed behind them in the second car. Around 9:45 a.m., Carpentieri and Pagel observed the defendant's vehicle make a turn without using a turn signal, so they initiated a traffic stop by turning on the patrol car's lights and siren. Before the defendant's vehicle pulled over, Carpentieri and Pagel observed items being thrown from the driver's side window onto the street. When the defendant's vehicle came to a stop, Carpentieri went to investigate the discarded items, and Pagel, joined by Stankus and Shea, approached the defendant's vehicle.

490 or any saltwater fisherman while having such knife in a vehicle for lawful hunting, fishing or trapping activities, or (G) any person participating in an authorized historic reenactment . . . ."

Although § 29-38 (b) was amended by No. 21-31, § 1, of the 2021 Public Acts, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The second amendment to the Unites States constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

[3] In the defendant's principal appellate brief, he asserts that § 29-38 is vague and overinclusive under a single due process claim. Because "overinclusiveness and vagueness are distinct concepts"; *State* v. *Jodi D.*, 340 Conn. 463, 467 n.1, 264 A.3d 509 (2021); we address these claims separately.

When Pagel peered through the driver's side window of the vehicle, he saw two occupants. He recognized the defendant, who was in the driver's seat, from previous encounters. He also saw a "machete that was in a fixed position between the [driver's] seat and the center console" and asked the defendant to step out of the vehicle. Pagel placed the defendant under arrest for illegal possession of a weapon in a motor vehicle and searched him, finding $133 in his pocket. Stankus searched the passenger and found a "clear glass tube with burned ends," which he suspected to be a crack pipe. He arrested the passenger for possession of drug paraphernalia. Once both occupants were out of the vehicle, Shea searched the vehicle and found a "clear plastic bag containing a white, rock like substance," which he suspected was crack cocaine.

While Pagel and Stankus were conducting the arrests, Carpentieri searched the street where the discarded items landed and found forty-three glassine bags containing "a tan powder substance," which he suspected was heroin, and a Ziplock bag containing smaller Ziplock bags. He seized the items and returned to the traffic stop. Later testing confirmed that the glassine bags found on the street contained heroin, fentanyl, and tramadol, and the bag found in the defendant's car contained crack cocaine.

The state charged the defendant with illegal possession of a controlled substance in violation of General Statutes (Rev. to 2019) § 21a-279 (b),[4] illegal possession

[4] General Statutes (Rev. to 2019) § 21a-279 provides in relevant part: "(a) (1) Any person who possesses or has under such person's control any quantity of any controlled substance, except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter, shall be guilty of a class A misdemeanor. . . .

"(b) Any person who violates subsection (a) of this section in or on, or within one thousand five hundred feet of, the real property comprising a . . . public or private elementary or secondary school and who is not enrolled as a student in such school . . . shall be guilty of a class A misdemeanor and shall be sentenced to a term of imprisonment and a period of probation

of a weapon in a motor vehicle in violation of § 29-38, tampering with physical evidence in violation of General Statutes § 53a-155,[5] possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) (1) (A),[6] and failure to use a turn signal in violation of General Statutes § 14-101.[7]

On August 1, 2022, the defendant filed a motion to suppress the items seized from his vehicle. On August 2, 2022, the court, *Schuman, J.*, conducted an evidentiary hearing on the motion to suppress. At the hearing, defense counsel informed the court that she was seeking to suppress only the bag of crack cocaine found in the defendant's vehicle, and not the machete.

That same day, the state filed a substitute information charging the defendant with three counts. Counts one and two charged the defendant with possession of narcotics with intent to sell in violation of General Statutes

during which such person shall perform community service as a condition of such probation, in a manner ordered by the court. . . .”

[5] General Statutes § 53a-155 (a) provides in relevant part: “A person is guilty of tampering with . . . physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted, such person . . . [a]lters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding . . . .”

[6] General Statutes § 21a-277 provides in relevant part: “(a) (1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance . . . .”

[7] General Statutes § 14-101 provides: “Any person who operates on any highway any motor vehicle so constructed or so loaded that the operator is unable to clearly indicate by hand signals to both approaching and following traffic his intention of stopping or turning, unless such motor vehicle is equipped with a turn signal or signalling device, or fails to cause such turn signal or device to be maintained, at all times, in good and sufficient working order, or fails to use the same when making any stop or turn, or the owner of any such motor vehicle who allows it to be so operated, shall be fined the amount designated for such infraction.”

§ 21a-278 (b),[8] alleging that he possessed and intended to sell heroin and cocaine, respectively. Count three charged the defendant with illegal possession of a weapon in a motor vehicle in violation of § 29-38, alleging that he possessed a machete knife in his car. Additionally, the state filed a part B information charging the defendant with one count of being a persistent serious felony offender pursuant to General Statutes § 53a-40 (c).[9] The defendant waived a jury trial as to the part B information only and pleaded not guilty as to all other charges.

On August 3, 2022, the court orally denied the defendant's motion to suppress on the record. The court rejected the defendant's argument that the bag of crack cocaine should be suppressed, finding that the officers had probable cause to search his vehicle pursuant to the automobile exception to the warrant requirement.[10]

---

[8] General Statutes § 21a-278 (b) (1) provides in relevant part: "No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter or chapter 420f . . . a narcotic substance . . . ."

[9] General Statutes § 53a-40 provides in relevant part: "(c) A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime.

* * *

"(k) When any person has been found to be a persistent serious felony offender, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted . . . may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony. . . ."

[10] "The United States Supreme Court first recognized the automobile exception to the fourth amendment warrant requirement in *Carroll* v. *United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 (1925), where the court explained that if [a] search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. Likewise, under our state constitution, our automobile

The case was tried to a jury on August 9, 10 and 11, 2022. On August 11, 2022, the jury returned a verdict of not guilty on counts one and two and guilty on count three. The defendant subsequently pleaded guilty to the part B information. On November 28, 2022, the court sentenced the defendant to a total effective sentence of six years of incarceration followed by four years of special parole with conditions. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we note that the defendant acknowledges that he did not preserve any of his claims on appeal, and he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Pursuant to *Golding*, a [defendant] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the [state] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *State* v. *Daniels*, 228 Conn. App. 321, 342, 324 A.3d 820, cert. denied, 350

exception permits a warrantless search of an automobile whenever the police have probable cause to do so . . . as where the searching officer[s] have probable cause to believe that the vehicle contains contraband. . . . The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made." (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 292–93, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017).

Conn. 926, 326 A.3d 248 (2024). "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Andaz*, 181 Conn. App. 228, 232, 186 A.3d 66, cert. denied, 329 Conn. 901, 184 A.3d 1214 (2018). For the following reasons, we conclude that the defendant's claims fail under *Golding*.

I

The defendant first claims that the court should have suppressed the machete seized from his vehicle. He argues that the court misapplied the plain view doctrine in determining that his arrest and the subsequent search of his vehicle were lawful. We conclude that this unpreserved claim fails under the first prong of *Golding*, and, accordingly, we decline to review it.

The following additional facts are relevant to our resolution of this claim. On August 1, 2022, the defendant filed a motion to suppress "any materials obtained by law enforcement subsequent to a search of the vehicle involved with the incident giving rise to this matter." He argued that "any material obtained via search of the defendant's vehicle after every occupant of the vehicle was detained and placed under arrest must be suppressed." The defendant's motion to suppress, however, made no arguments concerning the plain view doctrine or the seizure of the machete.

The following day, the court conducted an evidentiary hearing regarding the defendant's motion to suppress. At the hearing, the state presented the testimonies of Carpentieri, Pagel, and Shea. The defendant did not present any witnesses. The only evidence adduced concerning the machete was Pagel's testimony that, when he approached the defendant's vehicle during the traffic stop, he "noticed a machete . . . between the

driver seat and the center console," so he asked the defendant to exit the vehicle, and he seized the machete.

During the hearing, defense counsel expressly informed the court two times that she was seeking to suppress only the bags of crack cocaine found in his vehicle and *not* the machete.[11] She argued that the warrantless search of the defendant's vehicle was unlawful because the defendant and the passenger were both being detained outside of the vehicle at the time of the search. Defense counsel contended that, pursuant to *Arizona* v. *Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), the automobile exception does not permit officers to search a vehicle when the occupants have been removed from the vehicle. Although the prosecutor argued, inter alia, that Pagel's observation of the

---

[11] The following exchange occurred between the court and defense counsel at the outset of the hearing regarding the scope of the defendant's motion to suppress:

"The Court: So, as I understand it, your claim is limited to search incident to arrest of the car, which, based on the police report at least, produced the cocaine or some substance suspected to be cocaine, but you're not challenging any of the other items seized in this case?

"[Defense Counsel]: That's correct, Your Honor."

Later in the hearing, the following exchange occurred between the court and defense counsel regarding the machete:

"[Defense Counsel]: Your Honor, defense has filed a motion to suppress the materials that were obtained via an illegal search of this vehicle and—

"The Court: Well, you say materials, but your motion is very unclear. It doesn't specify which materials.

"[Defense Counsel]: Your Honor, the only material that was seized via search of this vehicle . . . was a bag of crack cocaine, I believe.

"The Court: Well, that's not entirely true, the machete was seized. You're not challeng[ing] that—

"[Defense Counsel]: Right.

"The Court:—as I understand it.

"[Defense Counsel]: Okay, Your Honor. So, then to clarify, in my motion we seek to suppress the bag of . . . alleged crack cocaine that was recovered from the vehicle. And I apologize for the lack of clarity on that in my written motion. Assuming the court is willing to accept my oral modification of my motion—

"The Court: Sure, yes.

"[Defense Counsel]:—I'll continue."

machete through the defendant's car window served as one permissible basis for the officers to search the defendant's vehicle, defense counsel did not address this argument or make any other arguments regarding the machete.

The following day, the court orally denied the defendant's motion to suppress on the record. The court stated: "The legal issue here is whether *Arizona* v. *Gant* [supra, 556 U.S. 332] eliminated [the] automobile exception to the warrant requirement in a case in which the occupants of the automobile are secured by the police in a police squad car. *Gant* itself expressly makes clear that it did not eliminate the automobile exception." The court continued: "So, it's clear that the automobile exception still applies, even when search incident to arrest does not. Applying the automobile exception in this case, I find that the police had probable cause to search the car and seize the suspected cocaine. There are really two components of that: one is the plain view observation of the machete, [and] the second is the finding of suspected heroin on the street, having apparently been thrown out of the car by the driver. Therefore, the police had probable cause to search the car and discover and seize the cocaine. . . . For these reasons, the motion to suppress is denied, and the state may admit the cocaine that's in question, subject to any state evidentiary concerns."

The defendant now claims that the court should have suppressed the machete. The state argues that the record is inadequate to review the defendant's claim, and, therefore, it fails under the first prong of *Golding.* The defendant, on the other hand, argues that the record is adequate because "[t]he plain view of the machete was raised and argued at the motion to suppress, and the trial court made a finding specific to the machete, based on counsels' arguments and the officers' testimony." He contends that "any gaps in the record are

due to the lack of probable cause, not because the record is inadequate." We agree with the state that the record is inadequate for review.

"The first *Golding* requirement is that the record be adequate to review the alleged claim of [constitutional] error . . . . The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted.) *State* v. *Burgos*, 170 Conn. App. 501, 546–47, 155 A.3d 246, cert. denied, 325 Conn. 907, 156 A.3d 538 (2017).

"[Connecticut] case law addressing whether a record is adequate for review under the first prong of *Golding* makes clear that this preservation exception operates in a very restrictive manner, particularly in the fact sensitive context of illegal search and seizure claims." *State* v. *Jenkins*, 298 Conn. 209, 227, 3 A.3d 806 (2010). In *State* v. *Brunetti*, 279 Conn. 39, 47, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), our Supreme Court determined that the record was inadequate to review the defendant's claim, made for the first time on appeal, that, although his *father* had consented to the officers' search of his home, the search was unconstitutional because the defendant's *mother* declined to consent to the search. Before the trial court, the defendant had moved to suppress evidence found in his home solely on the ground that the police improperly had induced his father to agree to the search. Id., 48–49. Although the suppression hearing revealed that the defendant's mother had refused to sign the written consent form proffered by the police, neither the state nor defense counsel inquired further about the mother's refusal to sign the consent form.

Id., 48–50. The trial court's ruling on the defendant's motion to suppress concluded that the "father's consent to search was knowing and voluntary, and, therefore, constitutionally valid." Id., 50. During its brief explanation of its ruling, the court stated: "It is clear that at least one of the parties, one of the parents, declined to consent to [the] search." (Internal quotation marks omitted.) Id., 51.

Our Supreme Court, on appeal, rejected the defendant's argument that the trial court's statement that at least one of the parents declined to consent to the search constituted a finding that the defendant's mother had refused consent to the search. Id., 56. The court emphasized that, "because the defendant's motions to suppress did not implicate the mother's consent or lack thereof, the state was not on notice that it was required to establish, on the basis of the totality of the circumstances, that the defendant's mother had consented to or acquiesced in the search. In such circumstances, the state bears no responsibility for the evidentiary lacunae, and, therefore, it would be manifestly unfair to the state for this court to reach the merits of the defendant's claim upon a mere *assumption* that the defendant's mother had declined to consent to the search." (Emphasis in original; footnote omitted.) Id., 59. Accordingly, the court concluded that "the facts revealed by the record [were] inadequate to establish whether the alleged constitutional violation did, in fact, occur." Id., 64.

"Our other . . . case law is consistent with *Brunetti* and makes clear that [Connecticut courts] consistently have declined to grant *Golding* review to [claims under the fourth amendment to the United States constitution] wherein the predicate factual record was not completely developed before the trial court." *State* v. *Jenkins*, supra, 298 Conn. 230; see also id., 223 ("the defendant's failure to litigate the validity of the patdown

during the suppression hearing rendered the record inadequate for *Golding* review of this issue"); *State* v. *Canales*, 281 Conn. 572, 582, 916 A.2d 767 (2007) (concluding that record was inadequate to review claim that defendant's statements were product of illegal arrest "because the defendant did not argue at the suppression hearing that the arrest lacked probable cause, the state did not offer evidence concerning probable cause, and the trial court was not called upon to determine whether probable cause to arrest existed"); *State* v. *Burgos*, supra, 170 Conn. App. 547–48 (concluding that record was inadequate to review defendant's fourth amendment claim because he "did not contest the validity of his consent in his motion to suppress or at the suppression hearing").

The present case is similar to *Brunetti*. Like the defendant in *Brunetti*, who did not raise his mother's lack of consent to search the home as a ground to suppress the items seized from his home; *State* v. *Brunetti*, supra, 279 Conn. 48; the defendant in the present case did not challenge the seizure of the machete or how it factored into the lawfulness of the seizure of the bags of crack cocaine found in his vehicle. See *State* v. *Jenkins*, supra, 298 Conn. 222–31 (record was inadequate to review defendant's claim that consent to search car was tainted by prior illegal detention and patdown partly because defendant did not raise issue of illegal patdown search at suppression hearing). In fact, defense counsel expressly informed the court that she was not seeking to suppress the machete or otherwise challenging its seizure. Only now, for the first time on appeal, does the defendant claim that the court should have suppressed the machete because the state failed to establish that its seizure was proper under the plain view doctrine.

Because the defendant did not raise issues related to the seizure of the machete at the suppression hearing,

the state was not alerted to the need to develop a factual record concerning the application of the plain view doctrine.[12] See id., 231 ("the state was not alerted to the need to develop a factual record concerning whether potentially permissible bases, such as consent, existed for the patdown search" (footnote omitted)). There is no record, for example, as to how Pagel knew that the item he saw was a machete and why he believed the machete was associated with criminal activity. Pagel's observation of the machete through the window of the defendant's vehicle is but one factor that the court would have been required to consider if the court had been asked to determine whether the machete was properly seized. See, e.g., *State* v. *Brunetti*, supra, 279 Conn. 63 ("the defendant's mother's refusal to sign the consent to search form is but one factor that the court would have been required to consider if the court had been asked to determine whether she had consented to the search").

Although the state asserted at the suppression hearing that Pagel's plain view observation of the machete constituted one permissible basis for the officers to search the vehicle, the state was not on notice as to whether it needed to fully develop that argument because the legality of the seizure of the machete was uncontested. In fact, when the prosecutor stated that the machete was seized pursuant to the plain view doctrine, the court interrupted to remind her that "the seizure of the machete is not contested here, it's the seizure

___

[12] "Under the plain view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. . . . The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation." (Internal quotation marks omitted.) *State* v. *Arokium*, 143 Conn. App. 419, 433, 71 A.3d 569, cert. denied, 310 Conn. 904, 75 A.3d 31 (2013).

of the cocaine."[13] Under these circumstances, our Supreme Court has indicated that the state bears no responsibility for the lack of evidence and, therefore, it would be "manifestly unfair" to the state for this court to reach the merits of the defendant's claim. *State* v. *Brunetti*, supra, 279 Conn. 59.

The defendant maintains that the court made findings of fact regarding the seizure of the machete because it stated that "the plain view observation of the machete" was one of two components that established probable cause to search the defendant's vehicle. The court's statement, however, was likely intended as "nothing more than a shorthand reference" to the unchallenged fact that Pagel saw the machete through the defendant's car window. *State* v. *Brunetti*, supra, 279 Conn. 62; see also id. ("it is highly likely that the court's passing observation that the defendant's mother had 'declined

---

[13] During the suppression hearing, the following exchange took place between the prosecutor and the court regarding the seizure of the machete under the plain view doctrine:

"[The Prosecutor]: . . . Your Honor, officers approach[ed] the vehicle based on a valid investigatory stop. . . . Once they approach[ed] the vehicle, there [was] a machete in plain view. At that point, the police may seize without a warrant any item that is reasonably believe[d] to be contraband or evidence of a crime that is in plain view if the officers are lawfully present to be in view of that item, and the state argues to you that they were because they were conducting a motor vehicle stop.

"The Court: But the seizure of the machete is not contested here, it's the seizure of the cocaine. There's no evidence that the cocaine was in plain view.

"[The Prosecutor]: Correct, Your Honor, but the machete . . . being in plain view is what gives the officers the probable cause to believe that there might be additional weapons in the motor vehicle, and that allows them to search the vehicle. And also, pursuant to the automobile exception, the police may conduct a warrantless on the scene search of a motor vehicle based on probable cause to believe that it contains contraband or evidence of the crime. . . . Your Honor, the state will argue that not only in the moment when the officer seize[d] the machete [was] there probable cause to search the car, but the moment that [Carpentieri] radio[ed] over that he [had] what is suspected to be narcotics that he saw be thrown out the driver side window . . . [there was] also probable cause there to search the vehicle." (Citation omitted.)

to consent to [the] search' was intended as nothing more than a shorthand reference to the undisputed fact that the state had not established her consent"). To conclude that the court intended for its statement to constitute a factual finding would be to "presume that the trial court had reason to be precise about how it characterized" the seizure of the machete when, in fact, that issue was not before the court. Id., 62–63. Furthermore, had the court intended to apply the plain view doctrine to the machete, it likely would have engaged in explicit fact-finding and analysis specific to that issue, as it did in applying the automobile exception.

Because the issue of the seizure of the machete was not before the court, the facts relevant to the issue of the plain view doctrine never were adduced in the trial court. Consequently, any decision by this court concerning the validity of the seizure would be "entirely speculative without the necessary factual and legal conclusions furnished by the trial court, [and] it is [therefore] unreviewable under the first prong of *Golding*."[14] *State* v. *Burgos*, supra, 170 Conn. App. 548.

II

The defendant next claims that his conviction of illegal possession of a weapon in a motor vehicle in violation of § 29-38 violates his right to bear arms under the second amendment to the United States constitution. He argues that the state has not met its burden of justifying the statute pursuant to the test set forth in *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U.S. 1, 18, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) (*Bruen*). We conclude that this unpreserved claim fails

---

[14] The defendant also seeks review of his claim under the plain error doctrine. See Practice Book § 60-5. "Because the record is inadequate for review under *Golding* it is also inadequate for consideration under the plain error doctrine." *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 69 n.3, 967 A.2d 41 (2009). Thus, we need not separately address the defendant's plain error claim.

under the first prong of *Golding*, and, accordingly, we decline to review it.

The defendant argues that his second amendment claim "is reviewable because it is a question of law and there is no dispute that the weapon at issue is a machete, therefore there are no further factual findings required." The state, on the other hand, argues that "the record is inadequate to determine whether a machete also is a weapon that is in common use today for self-defense, such that it meets the criteria for second amendment protection as elucidated in . . . *Bruen*." (Internal quotation marks omitted.)

In *Bruen*, the Supreme Court of the United States held that the "[s]econd [a]mendment protects the possession and use of weapons that are *in common use at the time*." (Emphasis added; internal quotation marks omitted.) *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, supra, 597 U.S. 21. The court further held that, "when the [s]econd [a]mendment's plain text covers an individual's conduct, the [c]onstitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this [n]ation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this [n]ation's historical tradition may a court conclude that the individual's conduct falls outside the [s]econd [a]mendment's unqualified command." (Internal quotation marks omitted.) Id., 17.

In *State* v. *Giannone*, 228 Conn. App. 11, 13, 323 A.3d 360 (2024), the defendant, who had been charged in connection with his alleged possession of a silencer and large capacity magazine and the sale of an assault rifle, claimed that the statutes under which he was charged violated his right to bear arms under the second

amendment. The trial court, without holding an evidentiary hearing, "concluded that his claims failed under the type of means-end balancing test that the Supreme Court [had] recently rejected in *Bruen*." Id., 31. On appeal, this court determined that the trial court "did not apply the correct legal standard when assessing the merits of the second amendment claims raised in the defendant's motions. Additionally, the court did not hold a hearing on the defendant's motions and, therefore, did not make any factual findings that . . . are necessary to apply the *Bruen* test. . . . Accordingly, the record is inadequate for our review of the defendant's claim under the standard announced in *Bruen*." Id. The court remanded the case because "the application of *Bruen* to the conduct at issue in the present cases involves disputed factual questions that must be resolved by the trial court, before which the parties can present evidence that can be explained through expert testimony and tested through cross-examination." (Internal quotation marks omitted.) Id., 34.

Specifically, "*Bruen* requires the following showing in second amendment cases. The initial step requires that the defendant, as the party challenging the statutes at issue in the present cases, show, by a preponderance of the evidence, that his conduct falls within the plain text of the second amendment, i.e., that the items at issue, first, are 'arms,' and second, are in common use or typically possessed for lawful purposes like self-defense. . . . If the defendant makes the necessary threshold showing as to any of the firearms or related components at issue, then the plain text of the second amendment 'presumptively protects' the defendant's right to keep and bear that firearm or related component. . . . The second step then requires the state to affirmatively prove, by presenting 'relevantly similar' historical analogues, that its regulation of the protected

'arm' is nonetheless 'consistent with the [n]ation's historical tradition of firearm regulation' and is, therefore, constitutional." (Citations omitted; footnote omitted.) Id., 38–39.

In the present case, the defendant did not raise his second amendment claim before the trial court. Consequently, the trial court did not hold an evidentiary hearing on the issue and did not make any of the factual findings that are necessary to apply the *Bruen* test. The defendant contends that, because it is undisputed that the weapon at issue is a machete, we do not need additional factual findings from the trial court to apply the *Bruen* test. Although it is undisputed that the weapon at issue is a machete, the parties dispute whether machetes constitute "[a]rms" under the second amendment, whether machetes are in common use or typically possessed for lawful purposes like self-defense, and whether § 29-38 is consistent with our nation's historical tradition of arms regulation. Thus, as in *Giannone*, there are disputed factual questions that need to be resolved by the trial court in order to apply the *Bruen* test. Although this court remanded the case for further proceedings in *Giannone*, the defendant had preserved his *Bruen* claim by raising it before the trial court and, therefore, was not required to satisfy any of the *Golding* prongs on appeal. See *State* v. *Giannone*, supra, 228 Conn. App. 14–16. Because the defendant in the present case failed to preserve his *Bruen* claim and is therefore required to establish that the record is adequate for review under the first prong of *Golding*, we decline to remand the case for further proceedings.

The defendant relies on *State* v. *DeCiccio*, 315 Conn. 79, 105 A.3d 165 (2014), arguing that factual findings are not necessary to determine whether machetes are protected by the second amendment because "[our]

Supreme Court has already interpreted 'arms' to encompass a category of knives that includes machetes." We disagree with the defendant's reading of *DeCiccio*.

Our Supreme Court in *DeCiccio* concluded only that *dirk knives* constitute "[a]rms" under the second amendment, specifically because of their "military origins and history . . . ." (Internal quotation marks omitted.) *State* v. *DeCiccio*, supra, 315 Conn. 120, 128. In fact, the court stated: "We emphasize that our conclusion is *limited to knives with characteristics of the dirk knife at issue in the present case*, and we do *not* decide whether the second amendment embraces knives generally. . . . Thus, we do not consider whether the right to keep and bear arms under the second amendment extends to other types of knives, including those identified in § 29-38 (a), such as [knives with blades that are four inches or longer]." (Citation omitted; emphasis added.) Id., 128 n.34. The court also distinguished dirk knives from machetes, noting that machetes are "significantly more lethal than dirk knives . . . ." Id., 147. Thus, the court in *DeCiccio* did not conclude that machetes constitute "[a]rms" under the second amendment, and there was no evidence adduced in the trial court as to whether there is a similar history of the use of machetes in the military that would entitle them to second amendment protection under the rationale of *DeCiccio*.

Because the issue of whether § 29-38 violates the defendant's right to bear arms under the second amendment was not before the court, the facts relevant to the application of the *Bruen* test never were adduced in that court. Consequently, the defendant's claim is unreviewable under the first prong of *Golding*.

## III

The defendant next claims that § 29-38 is unconstitutionally vague as applied to him, in violation of his due

process rights, because he was the victim of arbitrary and discriminatory enforcement.[15] He contends the "absence of an unlawful intent requirement" permits standardless law enforcement because "the officers were under no obligation to determine whether [the defendant] fell within an exception before arresting him." We conclude that this unpreserved due process claim fails under the third prong of *Golding* because the defendant cannot demonstrate that an alleged constitutional violation exists and deprived him of a fair trial. See *State* v. *Daniels*, supra, 228 Conn. App. 342.

Before addressing the merits of the defendant's claim, we set forth the applicable legal principles. "The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . In undertaking such review, we are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that

---

[15] "To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant must] . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *State* v. *Winot*, 294 Conn. 753, 759, 988 A.2d 188 (2010). The defendant appears to raise a claim under the first prong of the as applied vagueness test by arguing that "he was not afforded a reasonable opportunity to know what conduct was permitted or prohibited" by § 29-38. In his appellate briefs, however, he states that "[t]he issue here is not that the description of banned weapons is vague, it is the statute's arbitrary enforcement that violates due process." He also states that "[a] reasonable person reading § 29-38 is put on notice that there are lawful circumstances under which they can transport weapons in their vehicle." Because the defendant does not claim that he had inadequate notice that having the machete in his vehicle was prohibited under § 29-38 (a), except under the circumstances set forth in § 29-38 (b) (5), we construe the defendant's vagueness claim as a claim under the second prong of the as applied vagueness test only.

[he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement." (Internal quotation marks omitted.) *State* v. *DeCiccio*, supra, 315 Conn. 87.

The defendant argues that the statute allows the police to arrest a person for " 'knowingly' " possessing a prohibited weapon in their vehicle even when possession is lawful pursuant to an exception in § 29-38 (b) because the statute does not require the police to ascertain whether an exception applies before conducting an arrest. In support of this argument, he states: "For example, imagine an individual that lawfully possesses a machete that needs repair. There is an exception that makes it lawful for an individual to possess a machete in their vehicle if transporting it for repair. If that individual is pulled over for a traffic infraction and is arrested as soon as the machete is seen that individual has been arrested for lawful conduct." We are not persuaded.

The defendant contends that § 29-38 permits officers to arrest people for otherwise innocent conduct, but "the hypothetical applicability of [the statute] to conduct unrelated to the defendant's own actions is irrelevant to our consideration of whether the [statute is] unconstitutionally vague as applied to the defendant's conduct." *State* v. *Roy D. L.*, 339 Conn. 820, 855 n.18, 262 A.3d 712 (2021); see also *State* v. *Josephs*, 328 Conn. 21, 32, 176 A.3d 542 (2018) ("[u]nless a vagueness claim implicates the first amendment right to free speech, [a] defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not challenge the statute because it is vague as applied to some hypothetical situation" (internal quotation marks omitted)). The defendant has not argued that he

lawfully possessed the machete in his vehicle pursuant to an exception set forth in § 29-38 (b) (5). Because he fails to argue that "*he* was the victim of arbitrary or discriminatory enforcement," the defendant's claim that § 29-38 is unconstitutionally vague as applied to his conduct fails. (Emphasis in original.) *State* v. *Roy D. L.*, supra, 855 n.18.

The defendant has failed to meet his burden of establishing that the alleged constitutional violation exists. Accordingly, his unpreserved claim fails under the third prong of *Golding*.

IV

Lastly, the defendant claims that § 29-38 is unconstitutionally overinclusive in violation of his right to due process because the statute "encompasses an unreasonable amount of innocent activity." Specifically, he argues that the definition of weapons set forth in § 29-38 (a) "criminalizes a vast amount of standard, everyday tools . . . ." As applied to his own conduct, he contends that a machete is "both a weapon and a common agricultural tool" and that he "possessed the machete because he used it for his job as a flagger, which, at times, involved clearing brush—one of the primar[y] functions of a machete." We decline to review this claim because it fails under the first prong of *Golding*.

The following additional facts are relevant to our resolution of this claim. At trial, defense counsel indicated that the defendant possessed the machete in his vehicle for self-defense purposes because he lived in a high crime area. For example, defense counsel asked Pagel on cross-examination: "And, so, although you've testified that seeing a weapon might be an indication of a narcotics sale, it's not uncommon to see residents in this area carrying weapons for their own protection, correct?" Subsequently, during closing argument to the jury, defense counsel argued that Pagel's observation

of the machete was "not plausible," that the state failed to prove that the machete belonged to the defendant, and that the defendant possessed the machete for self-defense purposes. Defense counsel did not, however, present any evidence or argument at trial to suggest that the defendant possessed the machete for a purpose set forth in § 29-38 (b) or for agricultural purposes related to his work as a flagger.

Defense counsel mentioned the defendant's work as a flagger for the first time at sentencing, stating: "Although [the defendant] does report in the [presentence investigation] report that he is not currently employed, he also reports a pretty extensive history of working as a flagger for a couple of different agencies. And [the defendant's] report is essentially that working as a flagger can either be to direct traffic as it relates to . . . construction or direct traffic as it relates to sort of cutting down trees or something that could present a hazard to a driver who's attempting to go through the road. He does also report that, in the instance where he would be flagging for the purposes of helping with clearing a tree, he is sometimes required in the course of his job to also help clear brush, and that can require the use of a tool like the one that is—that he is convicted of having in his vehicle in this particular instance. I should note . . . there's no allegation that [the defendant] attempted to use this particular tool to commit any act of violence against any person, whether that be police or members of the public." The court, in sentencing the defendant, did not make any statement or findings concerning the purpose for which the defendant possessed the machete in his vehicle.

Turning to the defendant's claim that § 29-38 is unconstitutionally overinclusive, we set forth the following relevant legal principles. "Determining the constitutionality of a statute presents a question of law over which our review is plenary. . . . It [also] is well established

that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 143–44, 210 A.3d 1 (2019).

A statute is unconstitutionally overinclusive in violation of due process when "many of its clear applications are not rationally related to a legitimate government purpose."[16] *State* v. *Jodi D.*, 340 Conn. 463, 485, 264 A.3d 509 (2021); see also *State* v. *Higgins*, 265 Conn. 35, 68–69, 826 A.2d 1126 (2003) (recognizing, in dictum, that statute may be so overinclusive or underinclusive that it does not rationally advance legislative purpose). "[I]f a statute is unconstitutionally overinclusive, the statute still may constitutionally be applied to conduct that is within the statute's rational core." *State* v. *Jodi D.*, supra, 487.

Even assuming without deciding that § 29-38 is unconstitutionally overinclusive on its face, our inquiry does not end because the statute may be saved if the defendant's conduct falls within the statute's rational core. Because the defendant failed to raise with the trial court the argument that his possession of the

---

[16] Our Supreme Court, in *State* v. *Jodi D.*, 340 Conn. 463, 485 n.11, 264 A.3d 509 (2021), explained that the overinclusiveness doctrine generally applies to equal protection claims but indicated that it may apply to substantive due process claims as well. See id., 485–86 n.11 ("We disagree . . . that overinclusiveness claims can never implicate substantive due process principles. It is well established that a statute that is not rationally related to a legitimate government purpose violates the right to substantive due process . . . ." (Citation omitted.)).

machete was for a purpose that fell outside of the statute's core purpose, the record is inadequate for us to determine whether the statute is constitutional as applied to the defendant's conduct.

"Although an unpreserved due process claim may be addressed by this court under [*Golding*], such a claim necessarily will fail if the record simply is inadequate to review the alleged violation." (Citation omitted; footnote omitted.) *S. A.* v. *D. G.*, 198 Conn. App. 170, 196, 232 A.3d 1110 (2020); see also *State* v. *Lewis*, 273 Conn. 509, 515–16, 871 A.2d 986 (2005) ("to establish the unconstitutionality of the statute as applied to him, it [is] incumbent on the defendant to present a factual record demonstrating how the statute was in fact applied to him").

The issue of whether § 29-38 is unconstitutionally overinclusive as applied to the defendant's conduct depends on facts that are not in the record. We do not know, for example, the defendant's purpose for possessing the machete in his vehicle because the parties have presented theories that his possession was related to drugs, self-defense, and agricultural work. The defendant contends on appeal that he possessed the machete in his vehicle for lawful agricultural work-related purposes, but he has not provided a factual record to substantiate this contention. Had the defendant raised this constitutional challenge before the trial court, the court could have held an evidentiary hearing and made factual findings as to the circumstances under which the police found the machete in the defendant's vehicle, the defendant's purpose for possessing the machete in his vehicle, and his intended use of the machete. To fault the state for the lack of a factual record on the overinclusive issue would be manifestly unfair because the state was not alerted that it needed to develop a factual record as to how the defendant's conduct fell within the statute's rational core. See *State*

v. *Jenkins*, supra, 298 Conn. 229; *State* v. *Brunetti*, supra, 279 Conn. 59.

"[T]he defendant was required to clarify the record with respect to the factual predicates on which . . . his constitutional [claim is] based." *State* v. *Roberts*, 224 Conn. App. 471, 501, 312 A.3d 1086, cert. denied, 349 Conn. 912, 314 A.3d 602 (2024). Because the issue of whether § 29-38 is unconstitutionally overinclusive was not before the court, the record is inadequate to review the defendant's claim. We therefore conclude that the defendant's overinclusiveness claim fails under the first prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.